UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

SAWMILL WOODS HOMEOWNERS
ASSOCIATION, INC,
          Plaintiff,

v.

WEST BEND MUTUAL INSURANCE
COMPANY,
          Defendant.

## PLAINTIFF'S COMPLAINT

**Sawmill Woods Homeowners Association, Inc** ("Sawmill"), by counsel, for its claims against **West Bend Mutual Insurance Company** ("West Bend") states as follows:

## Parties

1)     At all times relevant herein, Sawmill is and has been a domestic non-profit corporation, and a condominium owners association with its principal place of business in Allen County, Indiana.

2)     At all times relevant hereto, Sawmill, through its declarations, maintained responsibility for certain real estate and improvements, including 59 multi-family buildings and one clubhouse building, located in Fort Wayne, Allen County, Indiana (the "Buildings").

3)     At all times relevant hereto, West Bend is and has been a Wisconsin-based insurance company, licensed by the Indiana Department of Insurance to issue insurance policies to Indiana businesses and residents, and has been doing business in accordance therewith.

## Jurisdiction and Venue

4)     The Court has jurisdiction under 28 U.S.C. § 1332 in that the parties are citizens of different states and the amount in controversy exceeds $75,000.

5) The Northern District of Indiana [Fort Wayne Division] is the appropriate venue because the property at issue in the complaint is located in Allen County, Indiana.

### The Claims

6) At all times relevant hereto, West Bend issued a Businessowners' Policy, Policy Number 2075486 07 to Sawmill (the "Policy"), which specifically covered the Buildings with Blanket Building and Business Personal Property Coverage with replacement cost coverage, during the term of coverage 3/4/2021-3/4/2022. [A copy of the Policy is herein attached as "Exhibit A".]

7) The Policy provides coverage for "direct physical loss of or damage to Covered Property".

8) The Loss Payment provisions of the Policy provide that West Bend will either:

a) Pay the value of lost or damaged property;
b) Pay the cost of repairing or replacing the lost or damaged property;
c) Take all or any part of the property at an agreed or appraised value; or
d) Repair, rebuild or replace the property with other property of like kind and quality, subject to Paragraph **d.(1)(e)** below.

9) Under paragraph d.(1)(e), the "value" of lost or damaged property is defined as "replacement cost without deduction for depreciation".

10) The Loss Payment provisions further provide that West Bend will pay for covered loss or damage within 30 days after receiving a sworn proof of loss, and an appraisal award has been made.

11) Sawmill paid all Policy premiums that became due during the Term, for all coverages and Endorsements.

12) The Policy remained in force throughout the duration of the Term and thereafter was renewed.

13) On or about 12/15/2021, Sawmill's Covered Property sustained damage from an accidental, direct physical loss (the "Loss").

14) Shortly thereafter, Sawmill reported its claim to West Bend.

15) West Bend received timely notice of the damage claim, and further assigned it Claim Number AP07736 (the "Claim"), with a date of loss of December 15, 2021.

16) Sawmill timely provided proof of loss, including an estimate of the cost of repair or replacement for 36 of the Buildings which Sawmill claimed were damaged.

17) West Bend inspected the property and determined that it was a covered loss, however the parties were unable to agree on the amount of loss.

18) After the parties were unable to agree to the amount of loss, Sawmill submitted a timely demand for an appraisal of the Loss in accordance with the Policy and named its appraiser.

19) The appraisal provision of the policy provides as follows:

2. Appraisal

If we and you disagree on the amount of loss, either may make written demand for an appraisal of the loss. In this event, each party will select a competent and impartial appraiser. The two appraisers will select an umpire. If they cannot agree, either may request that selection be made by a judge of a court having jurisdiction. The appraisers will state separately the amount of loss. If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will be binding. Each party will:
a. Pay its chosen appraiser; and
b. Bear the other expenses of the appraisal and umpire equally.

If there is an appraisal, we will still retain our right to deny the claim.

20) Thereafter, West Bend timely identified its appraiser.

21) After the appraisers were unable to agree, on September 17, 2022, Sawmill filed a lawsuit in the LaGrange Superior Court under Cause Number 44D01-2209-MI-000053 to appoint an umpire (the "State Cause").

22)     On October 3, 2022, West Bend removed the matter to the United States District Court for the Northern District of Indiana under Case Number 1:22-cv-00342 (the "Federal Case").

23)     On May 5, 2023, the District Court in the Federal Case appointed Ben Smith ("Smith") of BAS Consulting and Services LLC as Umpire for the appraisal in the Federal Case.

24)     Notably, Smith was proposed by West Bend to be the Umpire for the appraisal.

25)     Ultimately, Erik Pearson served as Sawmill's appraiser and Newel Anderson served West Bend's appraiser.

26)     In 2024, the appraisal panel had questions regarding the process and the Policy, and the appraisal process paused until those questions could be resolved.

27)     The parties and their respective counsel were unable to resolve those questions, and on February 3, 2025, Sawmill filed a Motion for Order Directing Appraisal in the Federal Case.

28)     On May 27, 2025, the Parties filed a Stipulation for Entry of an Agreed Order and to Vacate Hearing in the Federal Case.

29)     On May 28, 2025, the District Court issued its Agreed Order Directing Appraisal Panel.

30)     Thereafter, the parties negotiated the language of an Appraisal Award Form and Appraisal Award spreadsheet to assist the appraisal panel in issuing the Appraisal Award, in order to avoid future legal disputes.

31)     On June 18, 2025, the parties herein provided the Panel with a copy of the Agreed Order Directing Appraisal Panel, as well as the agreed Appraisal Award Form and Appraisal Award spreadsheet for issuance of an Appraisal Award. [A copy of the email by the parties to the Appraisal Panel is attached as Exhibit "B".]

4

32) Thereafter, the appraisal panel was delayed because of multiple reasons, including health and family issues with the Umpire.

33) Ultimately, on February 20, 2026, the Appraisal Panel issued a unanimous Appraisal Award, signed by both parties' appraisers and the Umpire. [A true copy of the Appraisal Award is attached as Exhibit "C".]

34) In the Appraisal Award, the unanimous Appraisal Panel agreed that one building was not damaged, and that the remaining 35 buildings were damaged and required full roof replacement, with a total replacement cost value ("RCV") of $550,666.21. [See Exhibit "C"]

35) Pursuant to the Policy, Sawmill's deductible for the entire Loss was $25,000.

36) After application of the deductible and West Bend's prior payment of $17,027.07, West Bend owes Sawmill a minimum of $508,639.14 in replacement cost benefits pursuant to the Policy.

37) On February 24, 2026, Sawmill's counsel emailed West Bend's counsel, providing a copy of the Appraisal Award, and a W-9 form, and demanding full payment of $508,639.14 in replacement cost benefits. [A true copy of the emails is attached as Exhibit "D".]

38) However, West Bend later sent a letter to Sawmill later that day refusing to pay the Appraisal Award without legal basis. [A true copy of the West Bend letter is attached as Exhibit "E".]

39) It is well-settled in this Circuit that insurance appraisal awards are strictly enforceable by the Court. *See Mesco Mfg., LLC v. Motorist Mut. Ins. Co.* 145 F.4th 705 (7th Cir. 2025); *See also Villas at Winding Ridge v. State Farm Fire & Casualty Co.*, 942 F.3d 824 (7th Cir. 2019).

40)    While the Policy includes a provision requiring an action to be brought "within two years after the date in which the direct physical loss or damage occurred", such precondition has either been waived by West Bend, or otherwise satisfied by the timely initiation of the State Cause or West Bend's agreement to toll the provision until 60 days following the issuance of an Appraisal Award.

41)    At all times relevant hereto, West Bend has acted by and through its employees, agents, and representatives in its handling of the Claim.

42)     Sawmill fully complied with all terms and conditions precedent under the Policy pertaining to the provision of coverage and/or the issuance of payment for all losses associated with the Claim.

43)    Sawmill has not excused West Bend's non-performance of its  obligations under the Policy.

44)    Sawmill has satisfied any and all preconditions to coverage, or to filing suit, or the same have been waived by West Bend.

**COUNT I – BREACH OF CONTRACT**

1-44.    Sawmill repeats and re-alleges rhetorical paragraphs 1-44, as if fully reincorporated herein.

45)    The Policy is a valid contract ("Contract") between Sawmill and West Bend.

46)    In addition to the provisions in the Policy, amendments, and endorsements, the Contract further includes additional provisions required by law, as well as an obligation by West Bend to exercise a covenant of good faith and fair dealing toward Sawmill.

47)    West Bend has breached its Contract with Sawmill in one or more of the following ways:

a)      Misrepresenting the terms and conditions of coverage and the Policy;

b)      Failing and refusing to pay Sawmill in accordance with the Policy;

c)      Misrepresenting West Bend's policies regarding payment of coverages;

e)      Failing and refusing to pay the replacement cost of Sawmill's damaged property, without legal excuse or justification;

f)      Failing and refusing to pay Sawmill pursuant to the Appraisal Award, without legal excuse or justification;

g)      Unnecessarily delaying the handling of the Claim, the appraisal and payment, without legal excuse or justification;

h)      Intentionally misleading and/or deceiving Sawmill; and

j)      Failing to exercise good faith and fair dealing in its handling of Sawmill's Claim.

48)     As a direct and proximate result of West Bend's breach of contract with Sawmill, Sawmill has suffered consequential damages, including but not limited to:

a)      The loss and damage to its property without indemnification provided for in the Policy;

b)      The loss of use of their property and other insurance benefits; and

c)      Other consequential damages.

WHEREFORE, Plaintiff **Sawmill Woods Homeowners Association Inc**, by counsel, respectfully requests judgment in its favor and against Defendant **West Bend Insurance Company**, and further requests the following relief:

A.      For the payment of all replacement cost benefits due under the Policy;

B.      For all reasonable compensatory and consequential damages;

C.    For recoverable pre-judgment and post-judgment interest; and recoverable

attorney fees and costs; and

D.    For all other just and proper relief in the premises.

Respectfully submitted,

ASHFORD DIMARTINO, P.C.
BY: C. ANTHONY ASHFORD, 19253-02
/s/ *C. Anthony Ashford*
/s/ *Guy S. DiMartino*
Attorneys for Plaintiff
336 W. 806 N.
Valparaiso, IN 46385
P: (219) 728-5210,
F: (219) 728-2052
tony@ashforddimartino.com
guy@ashforddimartino.com

## COUNT II – BAD FAITH/BREACH OF COVENANT OF GOOD FAITH

1-48.    Sawmill repeats and re-alleges rhetorical paragraphs 1-48, as if fully reincorporated herein.

49)    In addition to breaching its Contract with Sawmill, West Bend further breached its covenant of good faith and fair dealing with Sawmill in one or more of the following manners:

a)    By making an unfounded refusal to pay policy proceeds to Sawmill;

b)    By causing an unfounded delay in making payment to Sawmill for its damaged property;

c)    By misrepresenting pertinent facts and insurance policy provisions relating to the claims and coverages at issue;

d)    By attempting to exercise an unfair advantage to pressure Sawmill into a settlement of its claim;

e)    By intentionally delaying and interfering with the appraisal process;

8

f)    By compelling Sawmill to institute litigation to protect policy benefits due under the policy.

50)    West Bend's actions were made in bad faith and/or a breach of the covenant of good faith and fair dealing, and has resulted in additional injury and damage to Sawmill.

WHEREFORE, Plaintiff **Sawmill Woods Homeowners Association Inc**, by counsel, respectfully requests judgment in its favor and against Defendant **West Bend Insurance Company**, and further requests the following relief:

A.  For all reasonable compensatory and consequential damages at law;

B.  For reasonable punitive damages;

C.  For recoverable pre-judgment and post-judgment interest; and recoverable attorney fees and costs; and,

D.  For all other just and proper relief in the premises.

ASHFORD DIMARTINO, P.C.
BY: C. ANTHONY ASHFORD, 19253-02
/s/ *C. Anthony Ashford*
/s/ *Guy S. DiMartino*
Attorneys for Plaintiff
336 W. 806 N.
Valparaiso, IN 46385
P: (219) 728-5210,
F: (219) 728-2052
tony@ashforddimartino.com
guy@ashforddimartino.com

**JURY DEMAND**

**DEFENDANT/COUNTERCLAIM PLAINTIFFS, BY COUNSEL, HEREBY DEMAND**

**TRIAL BY JURY.**

Respectfully submitted,

ASHFORD DIMARTINO, P.C.
BY: C. ANTHONY ASHFORD, 19253-02
/s/ *C. Anthony Ashford*
Attorney for Plaintiff
336 W. 806 N. Suite A
Valparaiso, IN 46385
P: (219) 728-5210
F: (219) 728-2052
tony@ashforddimartino.com